IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EAGLE HOSPITAL PHYSICIANS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:04-CV-1015-JOF |
| | : | |
| SRG CONSULTING, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the court on Plaintiff's motion for sanctions [120-1].

**I.    Background**

**A.    Procedural History**

Plaintiff, Eagle Hospital Physicians, LLC, sued Defendants, SRG Consulting, Inc., Hospitalist Physicians, Inc., and Steven R. Gerst, on April 13, 2004, alleging causes of action of trademark infringement, unfair competition, and cybersquatting. Defendants filed an answer and a counterclaim seeking an accounting and declaratory judgment concerning commissions owed, and alleging breach of contract and quantum meruit. Defendant Gerst is the principal and sole shareholder of both Defendant SRG Consulting, Inc., and Hospitalist Physicians, Inc.  On November 15, 2005, at the parties' request, the court

directed that $39,858.97 be placed in the Registry of the Court pursuant to Federal Rule of Civil Procedure 67 as the parties agree that at least this amount is owed in commissions to Defendants for contracts signed before the termination of the agreement between Plaintiff and Defendants. Plaintiff, however, sought the protection of the registry of the court for its monetary claims against Defendants unrelated to the commissions issue, as well as outstanding attorney's liens filed by Defendants' previous counsel. The court previously has issued two orders on motions for summary judgment addressing whether commissions are owed on later hospitalist contracts and Plaintiff's cybersquatting claim.

After the conclusion of discovery, Plaintiff filed a motion for sanctions against Defendants pursuant to Rule 37(b)(2) and the court's inherent powers. Plaintiff bases its motion on Defendants' (1) refusal to answer questions concerning their ability to monitor communications between Plaintiff and Plaintiff's counsel, leaving open the possibility that Defendants are monitoring those communications, (2) failure to pay attorney's fees as directed by the court, and (3) failure to produce all documents required by court orders. In an order dated March 14, 2007, the court addressed portions of Plaintiff's motion. The court determined that Defendants' failure to produce certain financial and other documents could not form the basis for sanctions. *See* Order, dated Mar. 14, 2007, at 31-32. The court noted that Defendants' failure to pay $3750 in attorney's fees could form the basis for sanctions and directed Defendants to pay that amount within thirty days. The court presently has no

2

information before it that Defendants failed to do so. For this reason, the court considers Plaintiff's request for sanctions under the court's inherent powers only and not under Rule 37.

The court did, however, find that the interception of communications issue might allow for the imposition of sanctions. The court delayed scheduling a hearing on the matter to give Defendants time to acquire new counsel. Defendants are now represented by Laurence Zielke and Nancy Schook of Pedley, Zielke, Gordiner & Pence, LLC.

**B.    Facts**

The court has previously established that the two e-mails attached to an affidavit of Steven R. Gerst filed on September 26, 2005, contained attorney-client privileged information. *See* Order, dated February 28, 2006 (granting Plaintiff's motion to strike the documents from the record and directing Dr. Gerst to appear at a hearing on March 14, 2006, to explain how he obtained the documents). At the March 14, 2006 hearing, Dr. Gerst's counsel stated that they did not know how Dr. Gerst obtained the documents. The court granted Plaintiff permission to re-depose Dr. Gerst on this issue.

On April 13, 2006, Plaintiff deposed Dr. Gerst who was represented by separate counsel, Charles Floridas, of Miller & Martin. Dr. Gerst invoked the Fifth Amendment throughout the deposition. For example, Dr. Gerst refused to answer when asked whether he had intercepted or continued to intercept or had the assistance of others in intercepting

3

AO 72A
(Rev.8/82)

e-mails to Plaintiff's officers when addressed through the domain names: eaglehospitalphysicians.com, eaglehospitalist.com, and ehphospitalist.com. Dr. Gerst also refused to answer questions relating to his ability to intercept e-mails to or from Plaintiff's officers at other e-mail addresses, including the Blackberry of Plaintiff's officers.

On July 13, 2007, the court held a hearing on Plaintiff's motion for sanctions. At that hearing, Plaintiff demonstrated that Dr. Gerst had access to three varieties of attorney-client privileged material. First, Dr. Gerst had obtained an internal e-mail sent from Betty Abbott, the Chief Operating Officer of Eagle, to Dr. Robert Young, the Chief Executive Officer at Eagle. That e-mail discussed the draft complaint in the instant case and was attached to Dr. Gerst's affidavit filed on September 26, 2005. *See* Docket Entry [73-1]. Second, Dr. Gerst obtained an attorney-client privileged e-mail sent to Betty Abbot at her babbott@eaglehospitalphysicians.com address. *See* Docket Entry [67-1]. Finally, Dr. Gerst had attorney-client privileged e-mails sent from Betty Abbott at her babbott@ehphospitalists.com address to Plaintiff's outside corporate counsel, Andrew Prussack. *See* Docket Entries [74-1], [75-1], and [76-1]. These e-mails covered a time period from December 13, 2003 through September 13, 2005.

4

### C.     Contentions

Plaintiff argues that it has presented sufficient evidence to show that Dr. Gerst had – and possibly still has – access to internal communications of Plaintiff's officers, including privileged communications.  Plaintiff contends that in this civil case, the court should draw inferences from Dr. Gerst's invocation of the Fifth Amendment.  Plaintiff asks the court to strike Defendants' answer and counterclaim, to enter default judgment against them, and to award Plaintiff attorney's fees because no lesser sanction will suffice as Defendants have repeatedly violated the court's orders and because it is unfair for Plaintiff to litigate the case not knowing which communications Defendants have acquired.[1]

Defendants respond that there is no evidence in the record that Plaintiff's case has been prejudiced by Defendants' alleged interception because the documents pointed to by Plaintiff do not contain significant discussions.  Thus, Defendants have not gained any advantage from the intercepted e-mails.  Defendants further contend that there is no prospective harm from the intercepted e-mails because what was discussed in the e-mails

---

[1]During the July 13, 2007 hearing, Plaintiff also asserted that it recently discovered the facts that Dr. Gerst testified to in his affidavit concerning his current financial status were false.  The court determined that Dr. Gerst did not have notice of this issue as a subject of the sanctions motion and gave Plaintiff the choice of proceeding on the noticed issues or adjourning until Dr. Gerst was able to defend on the affidavit accusations.  Plaintiff chose to proceed only on the previously noticed issues.  Therefore, the court does not address this issue.

5

has already played out in the litigation. Finally, Defendants argue that the extreme sanction of dismissal is inappropriate.

**II      Discussion**

    **A.      Sanctions**

Although a court has the inherent power to supervise and sanction parties before it, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1990), the sanction of dismissal with prejudice is "extreme." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976); *see also In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1305 (11th Cir. 2006) (noting that under appropriate circumstances, court may dismiss lawsuit). The "key" to "unlocking a court's inherent power is a finding of bad faith." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d at 1304 (quotation and citation omitted). "A party . . . demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*

The court recognizes that the "severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not" suffice. *See id.* at 1306; *see also Zocaras v. Castro*, 465 F.3d 479 (11th Cir. 2006) (noting that "court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation," but that dismissal is sanction of last resort).

6

A court may use its inherent powers to preserve the integrity of the judicial process and prevent the perpetration of fraud on the court. *See generally Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). Although the Eleventh Circuit touched upon the issue in *Zocaras*, where the plaintiff filed a § 1983 excessive force complaint under a false name, the court never specifically addressed this issue as a "fraud on the court." The First Circuit defines fraud on the court as "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

Other circuits have discussed the appropriateness of dismissal in light of such fraud. *See, e.g.*, *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (where court determined that party concealed documents and lied about their existence for years, court considered facts of (1) public's interest in expeditious resolution of litigation, (2) court's need to manage its dockets, (3) risk of prejudice to party seeking sanctions, (4) public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions, before imposing dismissal under inherent powers); *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993) (where EPA administrator misrepresented academic achievements and government attorneys obstructed

7

defendants' efforts to investigate discrepancies, court applied multi-factor test of (1) degree of wrongdoer's culpability, (2) extent of client's blameworthiness, (3) prejudice to judicial process and administration of justice, (4) prejudice to victim, (5) availability of other sanctions, "to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future," and (6) public interest, to determine appropriateness of dismissal).

Plaintiff has also pointed to other cases in which a court considered sanctions for improper access to another party's attorney-client privileged information. During the course of breach of contract litigation filed by an individual person and the partnership in which he had a one-third interest, in *Perna v. Electronic Data Systems, Corp.*, 916 F. Supp. 388 (D.N.J. 1995), the defense counsel went to the plaintiffs' offices to inspect documents. While both plaintiffs' counsel and defense counsel were out to lunch together, the individual plaintiff looked into defense counsel's briefcase and reviewed documents in his briefcase. The individual plaintiff then had his corporate partner act as a "lookout" while he went to photocopy certain documents. Eventually, the individual plaintiff believed the documents did not contain anything new and threw them in the garbage can. The plaintiffs' counsel learned of the incident and informed defense counsel who moved the court to dismiss the entire litigation. Pursuant to a court's inherent power to prevent the perpetration of a fraud upon the court, the court ultimately dismissed the individual plaintiff's complaint with

8

prejudice, while allowing the partnership's claim to go forward with a jury instruction concerning the actions of the individual plaintiff.

In *Jackson v. Microsoft Corp.*, 78 Fed. Appx. 588 (9th Cir. 2003), a former employee of Microsoft filed a race discrimination claim against the company. During his deposition, the plaintiff turned over materials which the defendant learned had been stolen from it. The plaintiff also produced documents that had been altered. The documents produced by the plaintiff on a CD-ROM included Microsoft's proprietary information, confidential compensation figures, and attorney-client privileged communications between Microsoft management and counsel. The plaintiff eventually testified that he paid a current Microsoft employee to download the documents for him. At a second evidentiary hearing, the plaintiff invoked his Fifth Amendment privilege and declined to answer certain questions. The district court drew negative inferences from the plaintiff's refusal these questions. *See Jackson v. Microsoft, Corp.*, 211 F.R.D. 423 (W.D. Wash. 2002). The Ninth Circuit affirmed the district court's order and concluded that lesser sanctions would not be effective because the plaintiff's misconduct occurred throughout his deposition and several evidentiary hearings. Further, the court noted that a warning would be inadequate because the plaintiff had reviewed privileged information and thus, the defendant would be prejudiced if the case were to go forward.

9

While based on state law, the court also finds *Lipin v. Bender*, 84 N.Y.2d 562 (N.Y. 1994), instructive. There, the plaintiff filed a sexual harassment claim against her former supervisor and employer. During a pretrial hearing, the plaintiff (who now worked as a salaried paralegal for her attorney), sat at a conference table and saw a stack of papers, the top page of which showed a memo from defendant's counsel to the file. The memo discussed a summary of counsel's meeting with one of the plaintiff's former co-workers and the co-worker's recollection of legal advice given at the time of the plaintiff's termination. While the attorneys were engaged in debate before the special referee, the plaintiff moved the stack of documents to her lap and began reviewing them. On a break, she placed the documents in a file folder and informed her counsel what she had done. During a recess, the plaintiff made three copies of the documents. The plaintiff's counsel eventually read the documents, reasoning that any attorney-client privilege had been lost because of the "careless" handling of the documents.

The next day, the plaintiff's counsel met with defendants' counsel, confronted him with the documents and made a substantial money demand for settlement. Citing attorney-client privilege, the plaintiff's counsel refused to say where he acquired the documents. Despite being instructed by the court to return all copies of the documents to the court, the plaintiff hand copied documents before returning them to the court. The defendants moved for dismissal of the plaintiff's lawsuit. The court granted the defendants' motion finding it

10

the only remedy, despite its extreme nature, because "[o]therwise, there is no meaning to privilege, there is no meaning to conduct among attorneys, and there is no rule of law." *Id.* at 568. The Court of Appeals affirmed the trial court's decision. The court stated that it was clear that neither suppression of the documents, nor of the information would be a reasonable alternative. Nor could disqualification of the plaintiff's attorney suffice, because the plaintiff, herself, would carry the information forward into a new attorney-client relationship.

**B.   Application**

Here, the court finds that by acquiring information protected by the attorney-client privilege, attaching these documents to court filings, and not revealing whether any additional information has been obtained, Dr. Gerst has engaged in behavior that disrupts the litigation and is therefore in bad faith. While it is clear to the court that Dr. Gerst obtained at least five e-mails from December 13, 2003 through September 13, 2005, the court has no direct evidence that Dr. Gerst had additional documents or has retained the ability to intercept further communications. Because Dr. Gerst took the Fifth Amendment – as is his right – on such a wide variety of topics in his April 2006 deposition, the court and the parties will never know the extent to which Dr. Gerst was able to "eavesdrop" on Plaintiff and Plaintiff's officers. Just as Dr. Gerst is entitled to take the Fifth Amendment, in this civil case, however, the court is entitled to draw adverse inferences against Dr. Gerst

11

for that action.  *See*, *e.g.*, *United States v. Two Parcels of Real Property Located in Russell County, Alabama*, 92 F.3d 1123, 1129-30 (11th Cir. 1996).  It is a reasonable inference that Dr. Gerst continues to maintain the ability to intercept the communications, particularly where some of the domain names of the intercepted sites are not sites that Dr. Gerst has claimed proper ownership over in terms of the parties' cybersquatting dispute.  The fact that Plaintiff is not able to know for certain the extent of the interception is certainly a disruption to Plaintiff and the litigation in general.

The court also notes that the idea of confidentiality would not be foreign to Dr. Gerst, a physician.  Furthermore, Dr. Gerst has recently been involved in a great deal of litigation, a process of which would also familiarize him with the notions of confidentiality and attorney-client privilege.  According to Plaintiff – and not disputed by Dr. Gerst – Dr. Gerst is a plaintiff in two lawsuits in Fulton County Superior Court, two in the Circuit Court of Broward County, Florida, and one each in the Circuit Court of Jefferson County, Alabama, the Commonwealth of Kentucky, Fayette Circuit Court, and the Circuit Court of Montgomery County, Tennessee.

The court has considered whether lesser sanctions would suffice.  Dr. Gerst, however, has already been privy to at least some communications protected under the attorney-client privilege.  He cannot "unlearn" that information.  Further, neither the parties nor the court

12

will ever know the extent of Dr. Gerst's activities, substantially prejudicing Plaintiff's strategic position in the litigation.

At the July 2007 hearing, Dr. Gerst's counsel argued that Dr. Gerst's interference with the attorney-client privilege does not rise to the level of actions taken by the parties in cases described above.  The court, however, does not have the information necessary to evaluate such a claim.  In the cases cited by Plaintiff, the court and the parties learned through evidentiary hearings and testimony the extent of the wrongdoing.  Here, Dr. Gerst's invocation of the Fifth Amendment means that there is no basis to compare his actions. Plaintiff certainly has amassed enough information from which a reasonable inference can be drawn that Dr. Gerst had access to all communications of Dr. Young and Betty Abbott for a nearly two-year period.  Thus, in addition to all attorney-client privileged information, Dr. Gerst would then have had access to Dr. Young and Ms. Abbott's internal strategic business deliberations as well.

Dr. Gerst's counsel also suggested that Plaintiff had not been prejudice by Dr. Gerst's activities.  While it is true that some of the cases above have discussed the prejudice to Plaintiff, there is no requirement that Plaintiff demonstrate it has been prejudiced before sanctions can be imposed.  And, in any event, there is no question that the concept of intercepted communications had tainted and will continue to taint the litigation because the

13

court and Plaintiff have no information on how Dr. Gerst obtained the communications and whether he is currently able to monitor communications.

Finally, the court's ruling in this case will act as a deterrent to other litigants contemplating improper interception of communications between clients and their attorneys. *See Fidelity National Title Ins. Co. v. Intercounty National Title*, 2002 WL 1433717 (N.D. Ill. July 2, 2002) (noting deterrent effect); *Quela v. Payco-General American Creditas, Inc.*, 2000 WL 656681 (N.D. Ill. May 18, 2000) (rejecting sanctions lesser than dismissal because they were not severe enough to "deter this type of conduct in the future" and stating that "[e]ntering a default judgment will send a strong message to other litigants, who scheme to abuse the discovery process and lie to the Court, that this behavior will not be tolerated and will be severely punished."); *Brady v. United States*, 87 F. Supp. 444, 453 (C.D. Ill. 1994) ("Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence is merely excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.").

For the foregoing reasons, the court determines that Dr. Gerst has acted in bad faith in the litigation and that the nature of his activities mandates that no sanction lesser than striking of Defendants' answer and counterclaims will suffice.

### III. Conclusion

The court GRANTS Plaintiff's motion for sanctions [120-1]. The court STRIKES the answer of Defendant Dr. Steven R. Gerst, SRG Consulting, Inc., and Hospitalist Physicians, Inc. The court also STRIKES the counterclaim of Dr. Steven R. Gerst, SRG Consulting, Inc., and Hospitalist Physicians, Inc.

The court DIRECTS Plaintiff within fifteen (15) days from the date of this order to file a motion concerning damages and remedies. Defendants may then respond to that motion within seven (7) days. The court deems that a reply brief will not be necessary.

**IT IS SO ORDERED** this 28th day of August 2007.

                                                s/ J. Owen Forrester
                                                J. OWEN FORRESTER
                                     SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)