# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EAGLE HOSPITAL PHYSICIANS, LLC, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. |
| v. | : 1:04-CV-1015-JOF |
| | : |
| SRG CONSULTING, INC., HOSPITALIST PHYSICIANS, INC., and STEVEN R. GERST, | : |
| | : |
| Defendants. | : |

## OPINION AND ORDER

This matter is before the court on Defendants' motion for bond pending appeal [179]; Defendants' motion for stay of default judgment [180]; Plaintiff's motion for attorney's fees [184]; Lawrence Nodine's motion to withdraw as counsel [185]; Plaintiff's second motion to deposit funds into the registry of the court [204]; Defendants' motion for relief from default judgment [216]; Plaintiff's motion for leave to file sur-reply brief [221]; and Defendants' motion to strike Plaintiff's motion for leave to file sur-reply brief [222].

## I.   Motion for Relief from Default Judgment

As has become par for the course in this litigation, with the entry of Defendants' *eighth* attorney in this case comes yet another motion for reconsideration of the court's prior

rulings.[1] This motion, in the disguise of a Rule 60(b) motion for "mistake" on the part of the court, has no more merit than the numerous others rejected by the court. As Plaintiff's response to Defendants' motion handily disposes of Defendants' arguments on a myriad of legal grounds, the court limits its discussion to the most relevant points.

Defendants now argue that the court was incorrect two years ago in finding that certain documents attached to motions filed by Defendants were protected by the attorney-client privilege. Stringing together a few public documents, Defendants assert that Dr. Gerst is a manager of some of Plaintiff's entities and therefore also has attorney-client privilege with Plaintiff's corporation. The court shares Plaintiff's significant doubts that Dr. Gerst is a "manager" of any of these entities, but need not reach this issue. The salient point is that the court rejected this very argument in its February 28, 2006 order when it stated:

> Defendants first contend that these two documents should have been produced by Plaintiffs. Of course, they are privileged, so they would not have been produced in discovery but for on a privilege log. Defendants next appear to contend that it does not matter whether these documents are privileged because Plaintiff has a fiduciary duty to Defendant Gerst, who is a minority owner of Plaintiff. . . . In any event, the court disagrees that some kind of "fiduciary duty" allows a party – even if a minority owner – litigating against the company to be privy to the company's privileged discussions with its counsel. Finally, Defendant Gerst's belief that the company has acted wrongly against him or that counsel has a conflict of interest does not privilege him to violate the Federal Rules of Civil Procedure.

*See* Order, dated Feb. 28, 2006, at 31-32.

---

[1]The court GRANTS Lawrence Nodine's motion to withdraw as counsel [185].

AO 72A
(Rev.8/82)

Moreover, the court's extensive order on sanctions, dated August 28, 2007, discusses issues beyond the specific breach of attorney-client privilege as reasons for entering default judgment against Dr. Gerst. The court stated, "by acquiring information protected by the attorney-client privilege, attaching these documents to court filings, and not revealing whether any additional information has been obtained, Dr. Gerst has engaged in behavior that disrupts the litigation and is therefore in bad faith." *See* Order, dated Aug. 28, 2007, at 11. The court further noted that the fact that Plaintiff could never know the extent of Dr. Gerst's eavesdropping on its e-mail communications "is certainly a disruption to Plaintiff and the litigation in general." *Id.* at 12. "Here, Dr. Gerst's invocation of the Fifth Amendment means that there is no basis to compare his actions [to other similar wrongdoers]. Plaintiff certainly has amassed enough information from which a reasonable inference can be drawn that Dr. Gerst had access to all communications of Dr. Young and Betty Abbott for a nearly two-year period. Thus, in addition to all attorney-client privileged information, Dr. Gerst would then have had access to Dr. Young and Ms. Abbott's internal strategic business deliberations as well." *Id.* at 13.

Therefore, in the unlikely event that Dr. Gerst is a manager of any of Plaintiff's affiliated entities, and in the further unlikely event that such a position would grant him some kind of "joint privilege" with those entities against whom he was involved in litigation, the court would still not revisit its decision to impose the sanction of default against Dr.

3

Gerst. Should any of the parties need reminding, the court has been troubled by Dr. Gerst's behavior throughout the entire litigation. The court noted at an October 22, 2007 hearing:

> [I]n perhaps your first [brief] you hint at the fact that you might like for me to open the default, maybe there is a request that I actually do it. To put that aside so that we're no longer worrying about that, the answer is that I will not. Your client's conduct before you entered the case . . . would put him in the top five worst cases of bad faith that I've witnessed in the last twenty-six years. I have no faith that he would cure effectively anything that he has not done previously, and I don't think that there is any point in affording him an opportunity to further abuse the judicial process.

*See* Transcript, Oct. 22, 2007, at 6-7. Dr. Gerst's repeated pattern of firing and hiring attorneys, giving contradictory testimony in various litigations,[2] and rehashing old legal arguments does nothing to allay the court's concern about his abuse of the judicial process. For the foregoing reasons, the court DENIES Defendants' motion for relief from default judgment [216].[3]

---

[2]The court notes in particular Plaintiff's argument that Dr. Gerst previously admitted in judicio that Dr. Young was the sole manager of Plaintiff's affiliated entities. *See* Plaintiff's Response, at 9, 11-12.

[3]Because the court has denied Defendants' motion for relief from default judgment, the court DENIES AS MOOT Plaintiff's motion for leave to file sur-reply brief [221] and DENIES AS MOOT Defendants' motion to strike Plaintiff's motion for leave to file sur-reply brief [222].

4

## II. Motion for Attorney's Fees

In its February 25, 2008 order the court granted Plaintiff's motion for default judgment and awarded Plaintiff $44,000 in statutory damages under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1117(d). The court entered a permanent injunction and found that the case was "exceptional" under the anticybersquatting statute thereby entitling Plaintiff to attorney's fees under § 1117(a), specifically noting that it was rejecting Defendants' argument that the attorney's fees should be limited to those incurred in litigating the sanctions motion. The court directed Plaintiff to file a motion for attorney's fees. Plaintiff now seeks an award of $559,334 in attorney's fees.

Defendants oppose Plaintiff's request for attorney's fees arguing that (1) it is too broad in scope and (2) seeks fees for elements of the case upon which Plaintiff did not succeed. Specifically, Defendants note that the court denied Plaintiff's motion for preliminary injunction and portions of Plaintiff's motion for summary judgment on its claims and two summary judgment motions on Defendants' counterclaims. Further, Defendants ask the court to stay an award of attorney's fees until resolution of Defendants' appeal.

An application for attorney's fees begins with the basic principle that the court "is to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "A reasonable hourly rate is the prevailing

market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id.* The court must then consider the reasonable hours expended. The court must exclude "excessive, redundant or otherwise unnecessary" hours. *Id.* at 1301 (citation and quotation omitted). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). That burden includes providing records to the court to "show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*

Because the degree of success in Plaintiff's case is at issue in this attorney's fee request, the court also notes that in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court stated:

> the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. Plaintiff's counsel is required to be fully aware of all the circumstances and to explore and develop every aspect of plaintiff's case.

6

*Id.* at 440. In evaluating the degree of a plaintiff's success, "the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case." *Williams v. Roberts*, 904 F.2d 634, 640 (11th Cir. 1990) (*citing Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981)). When the operative facts relevant to the successful and unsuccessful claims are overlapping and intertwined, the court should decline to "dissect the interlocking evidence and consider it in isolation as supporting only one claim or the other." *Williams*, 904 F.2d at 640. When a plaintiff's claims for relief involve a "common core of facts or will be based on related legal theories," the lawsuit cannot be viewed as a series of discrete claims. *Hensley*, 461 U.S. at 435. When it is difficult to divide the hours expended by counsel on a claim-by-claim basis when much of counsel's time was devoted generally to the litigation as a whole, the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*; *see Norman v. Housing Auth.*, 836 F.2d 1292, 1298-1306 (11th Cir. 1988). While the instant case is not a § 1988 civil rights action, *Hensley* is persuasive authority on an argument of degree of success. *See Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (per curiam) (applying *Hensley* to ADA claim); *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1272 (11th Cir. 2000) (per curiam) (discussing *Hensley* in context of trade secret claim).

7

Plaintiff submitted a summary table of all timekeepers, their total hours, and the hourly rates charged at various times over the course of the litigation. To support the hourly rate calculation, Plaintiff submitted an affidavit of Maurice B. Scheidler, Director of Finance for Kilpatrick Stockton LLP. Mr. Scheidler's affidavit attaches articles from legal periodicals discussing the prevailing market rates. Plaintiff also notes that in its previous award of attorney's fees for a motion to compel, the court approved an hourly rate of $420 for Mr. Stephen Hudson, lead counsel in the case and the attorney who billed, by far, the most hours in the case. Plaintiff also submitted billing summaries broken down by subject matter, including preparation of the initial complaint ($34,858.50), first round of discovery ($52,444.50), preparing the motion for preliminary injunction ($41,261.50), second round of discovery ($80,329.50), third round of discovery ($29,801.00), first motion for summary judgment ($40,941.00), interception of attorney-client privileged e-mails ($68,016.00), discovery related to interception of e-mails ($26,679.50), second round of summary judgment ($60,969.00), motion for sanctions ($23,770.50), mediation sessions ($14,818.50), sanctions hearing ($19,568.50), motion for default judgment ($44,496.00), and motion for attorney's fees ($21,370.00). Finally, Plaintiff submitted the actual time records supporting its summaries.

The court first notes that Defendants do not challenge the hourly rates of the attorneys and legal staff. The court finds that they are in accordance with the prevailing market rate.

8

Defendants' arguments concerning Plaintiff's rate of success require more discussion. As the court's numerous orders in this case indicate, it has been an unusual anticybersquatting case, and the court has held Plaintiff closely to its requirements in the law. This is why the court denied Plaintiff's motion for a preliminary injunction. However, as Plaintiff points out, a key part of that order was the determination that Plaintiff had properly terminated the marketing contract with Defendants. That determination provided the significant legal basis for the court's rulings on what commissions would or would not be owed to Defendants, a matter that absorbed much of the court's attention during the first and second motions for summary judgment. While the court found that on three of the contracts, Defendants' claim for commissions would need to proceed to the jury, the court was quick to rule that Defendants' position on the remaining contracts was without merit. Further, the court notes that Plaintiff's second motion for summary judgment was necessitated by Defendants' assertion that more and more of the hospitalist contracts secured by Eagle would entitle him to a commission. Thus, the court finds no reason to reduce the lodestar amount of attorney's fees on any of these matters.

It should be clear that the court finds that every hour billed to Plaintiff on the interception of e-mail issue was necessary to the resolution of this case. It was Defendants' conduct which necessitated this collateral litigation. Further, as the court noted during the hearing on Plaintiff's motion for sanctions, the presentation of Plaintiff's counsel both in

9

AO 72A
(Rev.8/82)

writing on the pleadings and orally at the hearing was extremely beneficial to the court's understanding of the issue and should be fully compensated. The court's granting of the sanction of striking the answer led to the requirement of the motion for default judgment. That leaves the motion for attorney's fees. While nearly $22,000 for a motion for attorney's fees may be on the high side, the motion is very thorough and, unlike the majority of motions for attorney's fees, actually summarizes billing records by category or event and complies with the requirements of *Norman* and *ACLU v. Barnes*.

Finally, the court notes that unlike a § 1988 litigation where there is no client paying the fees of attorneys and the court may have questions about attorneys' billing incentives, here, the court has Plaintiff who has paid these legal bills to its counsel. That, in and of itself, is evidence of the reasonableness of the attorney's fees.

The court recognizes that an attorney's fee award of $559,334 is significant, particularly in relation to the damages the court awarded under the anticybersquatting claim. However, the court notes that Plaintiff spent a great deal of time successfully defending against Defendants' commission counterclaims which potentially had substantial value. Further, as stated above, Defendants' behavior in the litigation substantially drove up the costs. For the foregoing reasons, the court GRANTS Plaintiff's motion for attorney's fees [184].

AO 72A
(Rev.8/82)

## III. Motion for Stay Pending Appeal and to Approve Supersedeas Bond

Pursuant to Federal Rule of Civil Procedure 62, Defendants ask that the court stay execution of judgment in light of their supersedeas bond. Defendants seek the court's approval of a bond in the amount of $46,242, which Defendant asserts covers the judgment amount, estimated appeals costs, and interest on the judgment for two years. Plaintiff opposes this bond as insufficient in light of the court's order granting Plaintiff attorney's fees and Plaintiff's later motion specifying a request for attorney's fees in the amount of $559,334. Plaintiff also notes that Defendants' proposed bond does not include the $10,693.15 in costs taxed against Defendants on March 27, 2008.

The court agrees that in light of its ruling above granting Plaintiff's motion for attorney's fees in the amount of $559,334, Defendants' proposed $46,242 supersedeas bond is not sufficient. Therefore, the court DENIES WITH LEAVE TO RENEW Defendants' motion for bond pending appeal [179] and DENIES WITH LEAVE TO RENEW Defendants' motion for stay of default judgment [180].

## IV. Second Motion to Deposit Funds into Registry of Court

Plaintiff informs the court that it is in the process of making a distribution of profits to its members. Defendant SRG Consulting, Inc., is a member of Plaintiff, as is an entity known as Gerst Investments, L.P., of which Dr. Gerst is a partner. Plaintiff would be distributing $5,680 to SRG and $5,000 to Gerst Investments and asks leave of the court in

11

light of the judgment outstanding against Defendants to deposit those funds into the registry of the court. Plaintiff asserts that it could satisfy its judgment through non-party Gerst Investments, L.P., through a "charging order" under O.C.G.A. § 14-9-703(a). Defendants oppose Plaintiff's motion with respect to Gerst Investment, L.P., as a non-party to the instant litigation.

Although Plaintiff has provided an elaborate process through which it might be possible for the court to enter an order allowing the deposit of funds of a non-party into the registry of the court, the court declines to exercise its discretion to do so. Gerst Investment is not a party before the court in this case, and the court will not direct that any monies owed to it be placed into the registry of the court. The court does approve Plaintiff's motion with respect to those funds owed to Defendant SRG Consulting, Inc. The court GRANTS IN PART AND DENIES IN PART Plaintiff's second motion to deposit funds into the registry of the court [204]. Plaintiff is DIRECTED to prepare an order to that effect.

## V. Conclusion

The court DENIES WITH LEAVE TO RENEW Defendants' motion for bond pending appeal [179]; DENIES WITH LEAVE TO RENEW Defendants' motion for stay of default judgment [180]; GRANTS Plaintiff's motion for attorney's fees [184]; GRANTS Lawrence Nodine's motion to withdraw as counsel [185]; GRANTS IN PART AND DENIES IN PART Plaintiff's second motion to deposit funds into the registry of the court

12

[204]; DENIES Defendants' motion for relief from default judgment [216]; DENIES AS MOOT Plaintiff's motion for leave to file sur-reply brief [221]; and DENIES AS MOOT Defendants' motion to strike Plaintiff's motion for leave to file sur-reply brief [222].

**IT IS SO ORDERED** this 13th day of January 2009.

                                                s/ J. Owen Forrester
                                                J. OWEN FORRESTER
                                  SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)